Final case for argument this morning is v. United States v. Thomas Houck Thank you, Mr. Court. My name is Molly Meller, and I'm here representing the United States government. This is an appeal by the United States District Court for suppressing evidence of a statement of the search of the appellate Thomas Houck's recreational vehicle. Law enforcement in the state of Pennsylvania applied for or received a state search warrant for the property of 720 College Street Road. After conducting an undercover online peer-to-peer investigation on the Harry's Network for child pornography, the appliant of that search warrant's search inquirer specifically requested the search warrant include the search of any vehicles on the premises due to the portability of electronically-affected school child pornography, and the judge granted that. Now in executing the search warrant, the officer searched a recreational vehicle, an RV, or trailer that was located on the driveway of the property of 720 College Street Road. In the district court, when it's found that the officer's search for the RV exceeded the scope of the search warrant, or there was a valid search warrant that specifically authorized the search of any vehicles, does the RV constitute a vehicle? That is the question in this case. Of course, only the prominent recipient of that term, Black's Law Junction, can find the vehicle as an instrument of transportation for the case. If you think about the law, both in Missouri and Pennsylvania, law and federal law, a trailer or RV is defined as a vehicle, corresponding to Missouri law. The Missouri Revised Statute 301 and 301-6 defines a trailer as any vehicle, with outloaded power, designed for carrying property or passengers, on its own structure, to be drawn by a self-propelled gun. That's really a trailer, right? It's a trailer if it didn't have its own power, correct? That's correct. And in this case... So what we have here really is a trailer, right? A trailer. And it's also commonly known as a recreational vehicle. But you said it was in the driveway. It wasn't actually in the driveway. It was off the driveway on a separate path. Your Honor... It wasn't in the driveway when you drive up to the property. That's correct. Part of the RV did extend out into the grassy area. But there is a separate path for parking recreational vehicles, which, as I understand it, had an in-ground sewer hose connection. Your Honor, it was connected not to sewers. It was connected to water and electric. It had lines that were running to connect water and electric. I understood there was an in-ground port for a sewer hose as well. That was not evidence in this case. I do not believe that was the case. What was testified to from the suppression hearing is that it had lines for both water and electric that was being connected, but there was no sewage. And this was just a residential property where the RV was parked right next to the truck that had the trailer hitch that was used to convey the trailer or RV on a public roadway. But I do not believe it was any kind of sewage. Similarly, the Pennsylvania statute also defines a trailer as a vehicle defined by a motor vehicle. And 49 CFR 571, Federal Regulations, also defines a trailer or RV or recreational vehicle as a vehicle. But aside from what is defined as just a law and by its common term, this RV had only hours' time of being a vehicle. Every aspect of this RV, it was readily mobile. The district court found that in its opinion that this RV was readily mobile. That's a defining factor of a vehicle, that it's mobile, that it transports people, persons, or things. The RV was affixed with fully inflated tires and people could be attached to cabs in a very quick way. The evidence was that it would take approximately 30 minutes to get the RV hitched up to the truck. But it was not objectively being used as transportation at the time of the search, right? That's correct. In terms of Kearney? In terms of Kearney, that is correct, Your Honor. Do you think Kearney controls here? No, not at all, Your Honor. California v. Kearney dealt with a marvelous search of a motor home under the automobile exception. The automobile exception is not covered in this complaint here because we're not a valid search warrant that specifically authorized the search of a vehicle. What about footnote 3 in Kearney? Do you know about footnote 3 in Kearney where the court talks about, you don't have to talk about a vehicle exception, they talk about factors? Yes, Your Honor, and I believe that footnote, if I'm recalling correctly, the Supreme Court says what we're not addressing is what other factors would that mean to determine whether or not the automobile exception would apply, for example. You don't think it means what a vehicle is being used as a residence in Kearney? That's correct. You have Kearney in footnote 3? I don't think you briefed it, did you? Did you brief footnote 3? I do not believe we did brief footnote 3, Your Honor. Do you have the Kearney case? I do not have it in front of me, Your Honor. Okay. But I believe when I was reading through Kearney that I understood that footnote to simply mean that if the vehicle was not objectively being in a place, perhaps if it was in a more residential area in Kearney, the motor vehicle was in a parking lot. And that footnote, I believe, addressed factors that the court would look to if that was not the situation. If you read the court's words, now I know it takes putting words around, a warrant would be required where it's being used as a residence. You know, being used as a residence in the first sentence, a warrant would be required in the second sentence. That is correct, Your Honor. But in this case, there was a warrant. I think that footnote, what it's saying, these are the factors that the court would look to if a warrant was necessary and it would not fall under the automobile exception. In this case, there was a warrant. There was a warrant that specifically stated that it would serve to many vehicles. So- I don't think they need a warrant for the residence. That is correct, Your Honor. I do not believe that that means that it's a warrant for a residence. In this specific case, there is a warrant that included the property of 720 College Way Road that included any vehicles. I do not believe that the footnote says there needs to be a separate specific warrant for a motor vehicle that is located on the property of a residence for which a search warrant is already been applied for and granted. I believe that that footnote was stating when a warrant would be required if the automobile exception did not apply. Now, I don't know whether in that situation a warrant they were specifically addressing a RV that was on a parcel of land by itself, perhaps, was the support addressed in United States v. Schroeder, or if it was addressing a warrant in general terms for the location of the property that has been applied for. Well, they say one key to determine what it is is the location, which you talked about. That is correct, Your Honor. And in this case, that RV was located on the property of 720 College Road in a place that you probably would find RV to be parked. It was to differentiate this from Schroeder. This was not a situation where the RV was parked within a well-demarcated balance of curtilage. It was not behind the residence. There was no fence. There was no ditch separating it. There was nothing to indicate this. Well, this isn't a kind of curtilage, though. Do you think this is in curtilage at all? No, it's not at all. No, curtilage is a pretty flexible procedure. If you read the Supreme Court cases, it kind of starts at the edge of the sidewalk, but you don't get a lot of protection there. Right? That's correct, Your Honor. Is this a fair summary? Tell me if I'm crazy. But as you get closer to the house, you get lots of protection. That's correct. But there is no protection in this case because the RV was located on the curtilage of that property, 720 College Road. It was not located in a distinct other area of land. In Schroeder, that case, that camper trailer vehicle was located on a completely separate property at a separate distinct address. It was separated by barbed wire, I believe, and foliage. It was a completely different residence. That is not the case in this situation. Once again, the actual property, 720 College Road, includes the driveway, its front yard, its back yard. And this RV was located on, partially parked onto the driveway, the front yard of this property for which there was a valid search warrant. There was nothing to indicate to officers or anyone out there that this was a separate residence. Well, isn't that a fact issue? Well, I mean, the district court said it's a two-pronged test. It's a readily moveable and doesn't have the appearance of a residence. They said it's readily moveable, but it had the side or whatever you call it, bump out the foliage. It had steps. It had a grill outside. It was hooked up to utilities. It had a satellite dish at the top. They said it looks like a residence. Is that not a fact? Is that a fact that we have to interpret? Your Honor, I do not believe so because I think the district court was wrong. That two-pronged test that's being used is what's needed under the automobile exception. I don't believe that would be one of the search warrants specific to state any vehicles. When law enforcement officers are going out there to execute a search warrant, they need to be able to determine with specificity if that is a vehicle. Well, how do we decide if something is a vehicle if we don't use the automobile test? Ms. Chelsis, what do you think? Because, Your Honor, I don't know what that line is, but in this specific case, I don't think that that line was crossed. I think for every purpose that the law enforcement officers, when they went out there and saw this, they believed it to be a vehicle because every outward sign indicated it was a vehicle. The law indicates that it's a vehicle. Well, what law are you saying tells us it's a vehicle if we don't use the automobile exception? Your Honor, I'm talking about the law under the state of Missouri, under the state of Pennsylvania, the federal law, which defines vehicles. Yeah, but it's a trailer, really. You keep putting vehicle in there. It's really a trailer. But a trailer is a vehicle under purposes of the law. Both Missouri and Pennsylvania define a conveyance that is being driven on the highway, whether it's a trailer, whether it's called a fifth wheel, whether it's called a recreational vehicle, whatever it is, it's still defined as a vehicle because it's subject to the laws of the state that require it to be registered through its Department of Transportation. For example, this RV had a license plate on it. A license plate is something that's required. You may or may not know that. Yes. Because anything that has a license plate on it has to be subject to the rules and regulations of the Department of Transportation. So you're just saying it's got a license plate, end of discussion. Regardless of how permanently it was affixed to the property, regardless of what else they're doing around it, it's got a license plate and that's all there. That's the end of the discussion. Your Honor, I'm not saying that's the end of the discussion. I just think that's one of the factors to look at. How big a factor is it? Is it a big factor or a small factor? I think it is a pretty big factor because it indicates they have to go to the Department of Revenue or the Department of Transportation in your state to get that vehicle registered. It's subject to the laws of vehicles in our state. I believe my time right now is almost up. Would you answer the one, is the finding that it's a residence and not a vehicle is a factual finding that you have to determine as a court of appeals? No, Your Honor. I do not believe so. Your Honor, may it please the Court, my name is Brian Ridley. I'm here on behalf of the Office of Child and I'd like to address the question by Senator Boyd regarding the factual finding of the fact that whether or not it's a residence or a vehicle. I would like to say yes. Starting with the, I know the Court has had briefs from both parties on this case, but a brief by the government and my brief and five briefs. Mr. Rizzio, do you concede that this is a recreational vehicle? I concede it's a recreational vehicle. So how can a recreational vehicle not be a vehicle? Because it's a residence and it's defined, set out by the findings, the consistent findings that the advisory board made in its recommendation to the district court that were consistent with vehicle and armory. They go into the fact that it had an air conditioning on it. It was fully extended. It was not attached to the truck. And as I said, well, it could be ready and mobile in 30 minutes. These officers were watching the building they were searching and searching for. This recreational vehicle was not going anywhere. They were constantly searching it. In fact, the driver stayed in it. I believe he's leaving it there at some point. When they went, they had a lock on it. They had a parking meter sitting outside. They had all indications of being a residence. Right by is the truck where you put it right on there and move it in a matter of minutes. It's a finding of the trial court, too. It's certainly a finding of the trial court. He went both ways on that, but he ultimately determined based on all of his factual findings, he ultimately determined that for this purpose. Well, he had two factors. He said it was readily movable in the first place. Now, why doesn't some way the good faith exception apply? There's no instance of bad faith in these officers in any regard. We have to sit here talking about it so much. Surely the good faith exception applies. It applies in more egregious circumstances than this. The argument of why I do not believe it does apply is that all of those factors were known to the officers ahead of time. If you look at the testimony of Sergeant Pryor, if you look at the findings of the fact that the magistrate in Fort Lewis, in fact, made a footnote regarding that specific issue wherein he stated, you know, we already considered that evidence, and we looked at the evidence that they observed ahead of time, but they observed on the fact that he was watching and he believed that he was presiding there. So we believe he was presiding there because he was the president. Now, I did cite some case law. Granted, it was not easy to find case law on this, but there was a decision out of the State of California, as Janice says, that when they discover the search warrant for good faith, it's not enough. Well, that would be hard. If somebody's living in that apartment, does that mean they can't walk around? No. I don't believe it fits that situation. I believe it's set in certain conditions. So why wouldn't they be able to get out? Are those two things mutually exclusive? I think they can be. I think in the situation of this, and the findings of the district court made in this case, is they relied on the Army and they relied on Crisco and other fighters. And in the situation of a recreational vehicle, having the ability to be both, you know, something that can be transported down the road, but also something that can be sitting in a vehicle and can basically be used for personal purposes. Living in a different world at a different time, many people have decided that they're going to take up residence in a recreational vehicle, and that is what happened here. They had all the appearances of it when the officer drove the scene. But does it necessarily lose its characteristics of being a recreational vehicle? I'm not going to say it does lose its characteristics of being a vehicle. I'm just, my argument, the report, would be that the findings made here in the district court should not be overruled because— So if you and I are both struggling with that concept, why is Judge Maddow going to try to be in bad faith with the officers to assume that it still had characteristics of a vehicle that they're both authorized to be serving? I go back to just the investigation they did beforehand, and when they walked in there and they see the log, and they see everything else, and they approach it to be a residence, and the specific requirements needed for a search warrant to specify if there are two separate residences on the search warrant. Well, if required, you have to identify both residences. They could have stopped you. They could have went and applied for a second search warrant related to that. They could not do so, because they didn't complete the search. In fact, in this case, they later applied for a second search warrant, and they didn't get listed again, knowing that these issues had risen. So, based on that, I just argue that you need to investigate the subject of the crime. You need to talk to me about inevitable discovery, too. Goodness gracious. This is not going to be an evident discovery. What is? That's too many negatives. But you got my point. It looks like an evident discovery should apply here. I'm not going anywhere. Go ahead. I rely, again, on what the district court found, where basically there's the two prongs, and the fact that they essentially are using evidence that they obtained while they're in the residence, and they're both speaking with him. When we get to the portion of inevitable discovery, to gather information from him on that, the district court's recommendation to finally put through it. Only, when he found the prongs, they did find the first prong applied, but they did not find the second prong applied, because there was no independent, subsequent investigation going on, officer. Well, it doesn't say subsequent. There is some slippage in our cases, but an actual other investigating method is Munoz. Munoz is a pretty tough, you know, are you familiar with Munoz? The backpack case? Boy, how can you distinguish Munoz from what's really happening? The argument I would have to support is that on this case, they had an investigation going prior, set on the house prior to this investigation, prior to them submitting the search warrant. They received the scope of the search warrant, but they got a prior appraisal prior to them doing the search. Do you think the pre-search interview is not an actual other investigating method? The pre-search one, which the court did not suppress, there was an investigation, again, which they said there was a computer connect there. That was not there. Again, my argument would be is, once they received the scope of the search warrant, and found that, they should not be rewarded or benefited from the fact that they now obtained a computer by violating the terms of the search warrant, and then they're going to get a date. And again, they were continuing to question him, and also the state was more surprised that he had more information on the subject. He questioned him, and appeared to question him, and that was another reason why, again, the magistrate court went to detail writing on my name. But they do talk to Hal, the mother and the girlfriend, before they search. That's what I'm talking about, the pre-search interview. Yes. You don't think that's an actual other investigating method than being used in the formulation of the case? My opinion would be, it's all part of my argument to the court, that it's all in line with the same investigation leading up to it, and the search warrant, and the sergeant of the search warrant asking questions that are in line with it. So, again, while the court did not suppress those statements, it's all entailed into one inclusive investigation. There was no separate investigation where they're pursuing either leave or anything else. They had information, and there may be information on this case, and they put an officer on the scene to do a search and to establish the probable cause of taking the search warrant. They could take the search warrant. They, again, put it up to the RV, which appeared to be a resident, to ask questions. The third thing after that, which the district court suppressed, again, ties into, again, our argument is that you're not being rewarded for taking that evidence, and this is based on the fact that both might get replaced. If that was the case, then all search warrants that had issues with them or were evidence can't be suppressed because they've overrun the fact anyway. Well, that's a little bit what Munoz says it did, right? It does, in fact, yes. A lot of your arguments centered on jury evidence and the statutory definitions of the actual warrant here. That is correct. My initial response to that was that if you look at these felon's district briefs, those focused on motor vehicle and recreational vehicle and looking at motor vehicle, and I was trying to make a distinction that this girl had no motor vehicle. None of that decided, and, again, it appeared they were going to have the argument that this was a critical motor, and it didn't drive the plane. So I did, you know, again, make that argument. It is true. At this point, I'd like to admit that the word trailer does have the word vehicle, and, again, the state's been there, but... You can see the lack of a warrant that doesn't carry the data. Now, with regard to the fact that the search warrants state the vehicle, and, again, the trailer is a vehicle for that purpose, again, I'm simply trying to address some of the arguments that the felon's counsel made with regard to their reliance on definitions like motor vehicle and RV, and tying those together. But, again, at the end of the day, this report determined the RV to be in residence. They're subject to the search and rescue. That's all I have to say. Just briefly going back to your last question to be whether or not this were a case of minor error in the district court's factual finding that the RV is a resident, and I answered no. The reason why is because that factual finding is correct. The RV was being used as a residence, but what makes that error here is that the court relied on that as a distinguishing factor of whether or not it was an actual vehicle. The court should not have relied on the RV and the two-car automobile exception test to find that because it was also being used as a residence, it no longer was a vehicle under the terms of the search promises that we authorized the search of a vehicle. It almost sounds, though, that your argument is more along the lines of what you had meant to mention. It was a good faith determination. Why did you just argue that this was a... They may have been wrong to use it as a residence, but given its outward appearances with the license plate and so on, they acted in good faith. And that's correct. Even outside of if this was not a vehicle under the terms of the search warrant, the officers did act in good faith. Every indicator they had to them indicated that it was a vehicle. In fact, once they went inside the RV while they were searching it, they took a picture of the vehicle identification number, which is the sign. I've talked a lot to all vehicles that are on the roadway, and I believe that it said that this vehicle had the tire loading information and also said that this vehicle is subject to the United States safety standards for motor vehicles. But you agree that surely can't be the test. You live in southern Missouri where I'm from. They take all kinds of things and make them into houses and big bins and everything in the world, right? So that can't be the test, right? That's correct, but it's just one more factor because under a good faith, you have to judge the reasonableness of the officers' actions based upon the totality of the circumstances and the factors that were available to them at the time they were executing the search warrant, not what became clear to them afterwards. At the time they were executing the search warrant, every outward sign indicated that this was a vehicle to them, and as they continued the search, it indicated that it was a vehicle to them also, which goes to Mr. Howell's contention that they should have stopped the search and there was nothing even once they went into the RV that indicated to them that it was not a vehicle. Let me ask you, what authority do you rely on for a good faith in this situation? Your Honor, this is under Maryland v. Garrison because we often request in-valid search warrants because in this situation, an invalid search warrant is never found to be invalid unless it's analyzed by Maryland v. Garrison. And late at times, Your Honor, the government will request that the search warrant be found. Thank you. Very well counsel. Thank you for coming. I just want to make this clear. I just want to appreciate everyone who casefully submitted and cited in the forums.